R. L. BELISLE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Belisle v. Commissioner
Docket No. 6233-70.
United States Tax Court
T.C. Memo 1973-10; 1973 Tax Ct. Memo LEXIS 275; 32 T.C.M. (CCH) 35; T.C.M. (RIA) 73010; January 22, 1973, Filed *275 Held: Petitioner did not incur a theft loss in 1968. Held, further: Petitioner was not a head of household as defined in section 1(b)(2) in 1968. R. L. Belisle, pro se. Richard H. Gannon, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION
IRWIN, Judge: Respondent determined a deficiency of $1,859.11 in petitioner's income tax for 1968. The deficiency was based upon respondent's denial of head of household status to petitioner and his disallowance of a claimed $300,000 theft loss. In addition to raising the head of household and theft issues, petitioner has prayed for 2 some extraordinary relief that we shall discuss infra. FINDINGS OF FACT
Petitioner is Raymond L. Belisle who resided in Santa Monica, Calif., at all *276 relevant times. Petitioner alleges, and respondent admits, that petitioner's income tax return for 1968 was filed with the "collector for the 43rd District of Springfield, Missouri." In the 1930's petitioner and his sister purchased a parcel of land in Springfield, Mo. For some years prior to 1967 there were two houses upon this land, one of which was rented and the other occupied by petitioner's mother. In 1967 the Missouri Board of Higher Education condemned the land owned by petitioner and his sister along with other property in its immediate area. In an unspecified proceeding before a court in Missouri an $8,000 award was made with respect to the land. This award was supposed to compensate either petitioner or his sister, or both of them, for the taking of their land. In any event, petitioner was not satisfied with the award and he has in fact not personally received any compensation for the taking of the land. On his 1968 return petitioner deducted $300,000 as a theft loss incurred in the taking of his land. During 1968 petitioner's mother received her support in part from petitioner, petitioner's sister, and the State welfare department. 3 OPINION
At trial *277 petitioner requested that we relinquish jurisdiction over his case and send it to a Grand Jury for investigation of his charges of criminal fraud on the part of respondent's agents and of various people and institutions in the State of Missouri. Despite our explanations that the jurisdiction of this Court was limited to redetermining tax deficiencies and that we might be able to grant him some tax relief if he presented evidence concerning the issues raised by the notice of deficiency, petitioner insisted that his criminal charges would have to be tried before he could proceed with settling his tax bill. Other than his own somewhat chaotic testimony, petitioner presented no credible evidence concerning his claimed theft loss and his entitlement to head of household status in 1968. Consequently, our findings of fact are quite sparse and vague. As we can best determine, petitioner and his sister owned land which was condemned by an agency of the State of Missouri in 1967. Petitioner believes that the land was stolen from him and that he has not, and will not, be justly compensated for the taking. Petitioner has not supplied us with any records concerning the condemnation proceedings *278 in Missouri, nor do we know petitioner's basis in the condemned property. Suffice it to say that petitioner has not shown that his property was appropriated through criminal or 4 illegal means or that he even suffered a loss. There is nothing in the record which even suggests that petitioner is entitled to a deduction for a theft loss under section 165(c) [1] in 1968. In order to qualify for the special tax rates applicable to heads of households petitioner must show that he qualified as a head of household under section 1(b) (2). In petitioner's case he must show that he supplied over one-half the cost of maintaining the principal place of abode for his mother. While we are convinced that petitioner did provide funds for the support of his mother, petitioner did not substantiate the amounts that he contributed. Petitioner left his cancelled checks at home at the time of trial and did not wish to bring them to court. We also know that petitioner's mother received support from other sources, but we do not know the amounts of such support. Accordingly, petitioner has not demonstrated *279 the total amount spent on behalf of his mother in 1968 and the portion of that amount provided by him. Under these circumstances petitioner cannot qualify as a head of household under section 1(b) (2). Harvey L. Hopkings, 55 T.C. 538 (1970). Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended. ↩